INTERVENOR-DEFENDANT IONE BAND OF MIWOK INDIANS'
CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT THEREOF

Case No. 2:12-cv-01710-TLN-CKD

**APP. SUPP. AUTH. – EXHIBIT 2**

# COHEN'S HANDBOOK OF FEDERAL INDIAN LAW

## 2005 EDITION



LexisNexis™

Matthew Bender®

§ 3.02[4]                          FEDERAL INDIAN LAW

evidence about tribal existence; nevertheless, this evidence has no legal significance in the context of federally recognized political and legal existence.

### [4]—Federal Power to Recognize

Historically, the federal government has determined that certain groups of Indians will be recognized as tribes or nations for various purposes. The power of Congress to establish and maintain such political relations with Indian tribes derives from the Constitution's Indian commerce clause.[31] The Constitution also grants the executive branch authority to undertake diplomatic and administrative actions consistent with federal recognition. For instance, presidents have exercised their constitutional powers to "receive Ambassadors and other public Ministers"[32] by sending agents to various Indian tribes and receiving delegations from them, thereby suggesting the federal government's recognition of the respective tribes as governments. And until 1871, when Congress prohibited further treaty-making with Indian nations or tribes,[33] presidents also invoked their constitutional power to make treaties as the basis for taking actions that recognized tribes, including the establishment of reservations.[34] Although the President may no longer make treaties or establish reservations by executive order,[35] Congress has long delegated authority to the executive branch to take actions consistent with federal recognition of tribes.[36] This delegation was the source of executive branch authority to adopt an administrative process for federal recognition, which was done in 1978.[37]

At times, courts have also found federal authority in Indian affairs as a matter of federal common law derived from the federal government's historic guardianship role over Indian tribes.[38] Today, such statements locating federal power outside the framework of specific constitutional provisions conflict with widely accepted notions of limited federal power.[39]

When Congress or the executive branch has found that a tribe exists, courts normally will not disturb that determination. Some older cases have characterized

---

[31] U.S. Const. art. 1, § 8, cl. 3.

[32] U.S. Const. art. II, § 3.

[33] 25 U.S.C. § 71.

[34] U.S. Const. art. II, § 2, cl. 2.

[35] 43 U.S.C. § 150.

[36] 25 U.S.C. §§ 2, 9. For a discussion of the power of the executive branch to carry out federal recognition, see Mark D. Myers, *Federal Recognition of Indian Tribes in the United States*, 12 Stan. L. & Policy Rev. 271, 272–273 (2001).

[37] *See* § 3.02[7][a].

[38] *See, e.g.,* United States v. Sandoval, 231 U.S. 28, 45–46 (1913).

[39] *See, e.g.,* McClanahan v. Ariz. State Tax Comm'n, 411 U.S. 164, 172, n.7 (1973). *See* Ch. 5, § 5.01[4].

INDIAN TRIBES, INDIANS, AND INDIAN COUNTRY      § 3.02[4]

such determinations as political questions outside the scope of judicial review.[40] This characterization was appropriate when decisions regarding tribal existence were made for the purpose of entering into treaties with Indians, a process analogous to recognizing foreign governments and to other issues of international relations.[41]

Despite the end of formal treaty relations with Indian nations in 1871, judicial deference to findings of tribal existence is still warranted by the extensive nature and exercise of congressional power in the field. Congress has implicitly recognized the existence of most tribes through treaties, statutes, and ratified agreements, has mandated the publication of an official list of federally recognized tribes,[42] and has passed laws announcing federal recognition of particular tribes. The executive branch also makes recognition determinations pursuant to statutory schemes and in implementing the administrative process for securing federal recognition.[43]

There were several early challenges to federal power to determine tribal existence. In *United States v. Holliday*,[44] for example, the Supreme Court held that federal liquor laws were applicable to a sale of liquor to a Michigan Chippewa Indian despite a treaty provision anticipating the dissolution of the tribe, because the facts indicated that the Department of the Interior continued to regard the tribe as existing. The Court declared:

> In reference to all matters of this kind, it is the rule of this court to follow the action of the executive and other political departments of the government, whose more special duty it is to determine such affairs. If by them those Indians are recognized as a tribe, this court must do the same.[45]

The question of Congress's power to recognize tribal existence also has arisen in regard to asserted extensions of state jurisdiction over Indians. In *The Kansas Indians*,[46] the Supreme Court held that application of state tax laws to Shawnee,

---

[40] United States v. Rickert, 188 U.S. 432, 445 (1903); United States v. Holliday, 70 U.S. 407 (1865). *See generally* Baker v. Carr, 369 U.S. 186 (1962). The political question doctrine is not likely to be used today to close off all judicial review of congressional action in Indian affairs. *See* Delaware Tribal Bus. Comm. v. Weeks, 430 U.S. 73 (1977).

[41] *See* Miami Nation of Indiana, Inc. v. U.S. Dep't of Int., 255 F.3d 342, 347–348 (7th Cir. 2001) (while historically, such acts of recognition would not be amenable to judicial review under political question doctrine, when administrative procedures have been created limiting discretion of subordinate officials by means of regulations requiring them to make legal and factual determinations, judicial review of those determinations is proper). *See* Ch. 5, § 5.02[3].

[42] 25 U.S.C. §§ 479a, 479a-1.

[43] *See* §§ 3.02[6], [7].

[44] United States v. Holliday, 70 U.S. 407 (1865).

[45] United States v. Holliday, 70 U.S. 407, 419 (1865).

[46] The Kansas Indians, 72 U.S. 737, 755–757 (1867).

§ 3.02[4]                    FEDERAL INDIAN LAW

Wea, and Miami Indians of Kansas was unconstitutional on the ground that the tribal relations of these Indians were still recognized by the Department of the Interior. In *Chippewa Indians v. United States*,[47] the Supreme Court rejected the argument that the enactment of an allotment act designed to break up the reservation and individualize tribal property resulted in loss of federal power to expend remaining funds for tribal purposes, noting that although the act in question contemplated such dissolution in the future, "in the interim, Congress did not intend to surrender its guardianship over the Indians or treat them otherwise than as tribal Indians."

No congressional or executive determination of tribal status has been over-turned by the courts, but a limit on Congress's power to define tribal status was suggested in *United States v. Sandoval*:

> Of course, it is not meant by this that Congress may bring a community or body of people within the range of this power by arbitrarily calling them an Indian tribe, but only that in respect of distinctly Indian communities the questions whether, to that extent, and for what time they shall be recognized and dealt with as dependent tribes requiring the guardianship and protection of the United States are to be determined by Congress, and not by the courts.[48]

The Supreme Court has never refined the "arbitrariness" standard referred to in *Sandoval*.[49] In light of the deference given to congressional and executive determinations in this area, however, it would appear that the only practical limitations on congressional and executive decisions as to tribal existence are the broad requirements that: (a) the group have some ancestors who lived in what is now the United States before discovery by Europeans, and (b) the group be a "people distinct from others."[50]

While clear indications from the political branches demonstrating federal recognition warrant judicial deference, a separate question is whether courts may

---

[47] Chippewa Indians v. United States, 307 U.S. 1, 4 (1939). *See also* United States v. John, 437 U.S. 634, 650 (1978) (federal power over Mississippi Choctaw Tribe upheld even though tribe is remnant of larger group which had been removed to Oklahoma); Perrin v. United States, 232 U.S. 478, 487 (1914) (upholding constitutionality of liquor legislation covering lands ceded by Yankton Sioux Tribe, where "the tribal relation has not been dissolved"); Tiger v. W. Inv. Co., 221 U.S. 286, 316 (1911) (upholding constitutionality of congressional restriction upon alienation of lands of "a member of the existing Creek Nation").

[48] United States v. Sandoval, 231 U.S. 28, 46 (1913).

[49] *Cf.* Delaware Tribal Bus. Comm. v. Weeks, 430 U.S. 73, 84–85 (1977) (legislative judgment not disturbed as long as special treatment is rationally connected to fulfillment of Congress's obligation to Indians).

[50] The Kansas Indians, 72 U.S. 737, 755 (1867). Congress also has recognized tribes that have migrated into the United States. *See, e.g.,* 25 U.S.C. § 495) (reservation established for Metlakahtla Indians). A widely discussed question today is whether Congress may afford federal recognition to Native Hawaiians. For a discussion of this question, see Ch. 4, § 4.07[4].

make determinations affecting federal recognition when the intentions of those other branches are more ambiguous. This question has become more urgent in light of recent efforts by Congress and the executive branch to achieve greater precision in identifying federally recognized tribes. Since 1978, the Secretary of the Interior has administered a process by which tribes may petition for federal recognition;[51] and since 1994, Congress has required the Secretary of the Interior to promulgate a list of federally recognized tribes.[52] Some native groups that have not completed the lengthy petitioning process and have not been included on this list have brought lawsuits that depend for their success on determinations of federally recognized tribal existence. Most lower courts hearing such claims have concluded that they must defer to the administrative process, and have declined to engage in findings regarding tribal status on a number of grounds, including failure to exhaust administrative remedies, ripeness, and primary jurisdiction.[53]

In sum, Congress has approved a variety of mechanisms by which Indian nations can secure federal recognition, including determinations by legislative, administrative, and judicial bodies.[54] Throughout the history of tribal-federal relations, all three mechanisms have been employed. In addition, court decisions have operated to interpret and affirm the actions of the political branches. The following sections explore these mechanisms.

### [5]—Establishment of Relations Through Congressional Acts, Treaties, and Executive Orders

Until the twentieth century, the existence of treaty relations or other formal political acts recognizing tribal status of particular groups such as statutes and ratified agreements obviated the need for any more refined considerations, definitions, or criteria for tribal status.[55] As noted in § 3.02[4], courts have invariably deferred to such acts of recognition by the political branches. Today, the existence of an official list of federally recognized tribes dispenses with uncertainty as to those groups included on the list.[56] Tribes not included on the list may be able to establish their status as federally recognized through other means, however.

---

[51] 25 C.F.R. Part 83.

[52] 25 U.S.C. §§ 479a, 479a-1.

[53] *See* § 3.02[7][b].

[54] *See* 25 U.S.C. §§ 479a, 479a-1.

[55] *See generally,* William W. Quinn, Jr., *Federal Acknowledgment of American Indian Tribes: The Historical Development of a Legal Concept,* XXXIV American Journal of Legal History 331 (1990). While Congress ended treaty-making in 1871, the federal government continued to conduct relations with Indian tribes through statutes, agreements, and executive orders. *See* Ch. 5, § 5.01[1].

[56] 25 U.S.C. §§ 479a, 479a-1. *See* Western Shoshone Business Council v. Babbitt, 1 F.3d 1052 (10th Cir. 1993) (tribe not on list is not tribe for purposes of 25 U.S.C. § 81, governing certain contracts with Indian tribes).